Smith, P. J.
Of tbe objections filed by the appellants to tbe probate of tbe will, those relied on at tbe hearing were, that tbe testator was of unsound mind and not capable of making a will, and that tbe instrument presented for probate was not his will. Tbe same objections are insisted upon here.
Tbe testimony bearing upon the condition of tbe testator’s mind at the time of the execution of the will is conflicting. The will is dated tbe 24th of August, 1883. The testator died in the following January, aged 82 or 83 years. He was a farmer by occupation; his family consisted of his wife, who was 78 years of age, his son Nathaniel, aged about twenty-five years, Avho was married and lived with the deceased on the farm of the latter, in Genoa, Cayuga county, and worked it on shares, his son William, a widower, who, Avith his son Fred, also lived Avith the testator, his sons David and Leroy, the former of whom lived *254 on a farm in Genoa, and the other in the State of Iowa, and a daughter, Elizabeth Whitman, living in Moravia.
The deceased had had two attacks of illness, which were spoken of by members of the family as shocks of paralysis, one about harvest time in 1882, the other in the latter part of May, 1883.
The testimony leaves no room to doubt that after those attacks, the physical condition of the testator was much enfeebled and impaired, so that he walked with difficulty ; his articulation was imperfect and indistinct, at times some of the features of his face were distorted, he was unable to feed himself at table, and. occasionally he failed to recognize his acquaintances, either from failure of sight or lack of recollection. That his mind was also affected to some extent, can hardly be questioned.
The theory of the contestants was that his mind was so far impaired by the same or other causes, that in August, 1883, he was incapable of making a will. That theory was combated by the proponents of the will, and upon that issue much testimony was introduced by each party. To that testimony we do not think it necessary more particularly to advert. If the sole inquiry in the case were the abstract question, whether at the time of the execution of the instrument propounded as his will, the deceased had sufficient mental capacity to comprehend its provisions, upon their being fully and distinctly made known to him, we would not be prepared to say that the conclusion 'reached'by the surrogate is not a satisfactory solution of the problem presented by the mass of conflicting testimony which he was called upon to weigh.
' But there are several circumstances in the case, which raise a serious doubt iii our minds, as to whether the provisions of the will were so made known to the deceased, as that in his enfeebled and impaired condition of body and intellect, he • comprehended their import. Among those circumstances are the following:
1. The will gives nothing to the wife of the testator, and she is not mentioned in it. He and his wife had lived together nearly sixty years, in harmony, for aught that appears, and were so living when the will was executed. What makes the omission of her name the more remarkable is, that in December, 1882, the deceased made a will, in which he gave to his wife'the use of all his property, during her life. She had no property of her own except such as the law gives her as his widow.
2. The will was not executed at the house of the testator, but he was carried, for the purpose, by his son Nathaniel, to the residence of Mr. Downing, the executor named in the will, about a mile from testator’s residence, and there the will was drawn by Mr. Greenfield, who had been procured by Mr. Downing to come there to meet the deceased. Neither the widow nor any *255 member of tbe testator’s family, except Nathaniel and his wife, who are the principal legatees, was informed of the purpose for which the testator was taken to Downing’s house.
8. There is no evidence that Mr.'Greenfield, the draftsman of the will, received any instructions from the testator as to how the will should be drawn, and none that the will was read over by the testator, or to him, or that he was in any manner made acquainted with its contents. The subscribing witnesses, and the only witnesses who testified as to what took place on that occasion, were Mr. Greenfield and Mrs. Downing, the wife of the executor. Mrs. Downing testified that no part of the will was read over to the testator while she was there, or in her hearing. Mr. Greenfield did not testify that the will or any part of it was read to or by the testator, or that its contents were made known to him. On the contrary, he testified that the testator was unable to write his name, saying that he had not his glasses with him, and could not see very well; from which it is to be inferred that he could not see to read writing. The witness also testified that he saw no paper, memorandum or letter, other than the will, there, at the time, showing that he had no written. instructions to guide him in drawing the will. He did not testify that the testator told him to draw the will; on the contrary, while he stated, in general terms, that the testator had something to say about his wife, Nathaniel and his wife, William his son, and Frederick his grandson, the witness did not state what the testator said about either of them, and subsequently he testified that, on reflection, he did not remember whether anything was said about Ms son, Nathaniel. Yet the paper drawn by the witness makes Nathaniel and his wife the principal legatees. The witness used the expression, “ He,” the testator, “ did not talk about his property aside from the mere disposition of it, that I know of; nobody talked about Ms property in his or my presence except himself, and he only in regard to the disposition of it in his will; ” but aside from tMs allusion to the subject there is no statement in the testimony of the witness that the testator said anything about the disposition of his property, and absolutely none as to what he said, if anything, on that subject.
In view of all the circumstances disclosed by the evidence, we are of the opinion that the ordinary presumptions flowing from the fact of formal execution do not obtain, and that the burden is thrown upon the proponents of the will, to show clearly that the testator fully understood the nature and consequences of his testamentary act. (Wier v. Fitzgerald, 2 Bradf., Sur. R., 69; Mowry v. Silber, id., 133; Van Pelt v. Van Pelt, 30 Barb., 134; In re Will of Clausmann, 24 N. Y., W. Dig., 226.)
That burden has not been satisfactorily met. We therefore reverse the decree appealed from, and direct the trial, by a jury, *256 of the material questions of fact, arising upon the issues between the parties, namely, whether at the time of the alleged execution of the instrument proposed for probate, the testator was mentally capable of making a will, whether he was free from undue influence, and whether he was fully aware of the contents of said instrument and comprehended its effect. The trial to be had at a circuit court in the County of Cayuga. The appellants to have the costs of this appeal, to be paid out of the estate, in case they finally succeed in opposing probate of said instrument.
Barkek, Haight and Bradley, JJ., concur..
So ordered.